# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RODNEY MARQUES FORD,

        Defendant-Appellant.

UNPUBLISHED
August 28, 2018

No. 339084
Wayne Circuit Court
LC No. 16-004389-01-FC

Before: O'BRIEN, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of involuntary manslaughter, MCL 750.321; carrying a concealed weapon (CCW), MCL 750.227; and possession of a firearm in the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 8 to 15 years' imprisonment for involuntary manslaughter, 2 to 5 years' imprisonment for CCW, and 2 years' imprisonment for felony-firearm. We affirm.

This case arose from the death of 37-year-old Kyieyan Warlick (hereinafter "the victim"), in the parking lot of the El Mexicano Bar and Grill (hereinafter "the Bar") in Romulus in the early morning hours of March 13, 2016.

## I. INSUFFICIENCY OF THE EVIDENCE (IDENTITY)

Defendant asserts that the prosecution presented insufficient evidence on the issue of identity to sustain his convictions. Defendant focuses on the allegedly questionable credibility of the witnesses who identified defendant and the lack of physical evidence.

"Due process requires that, to sustain a conviction, the evidence must show guilt beyond a reasonable doubt." *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). This Court reviews a challenge to the sufficiency of the evidence de novo, *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014), with the Court viewing "the evidence in a light most favorable to the prosecution and determin[ing] whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted). "It is

-1-

for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

"[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). This Court explained in *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016):

> Evidence is sufficient if, when viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime. Juries, and not appellate courts, see and hear the testimony of witnesses; therefore, we defer to the credibility assessments made by a jury. It is for the trier of fact . . . to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. Consequently, we resolve all conflicts in the evidence in favor of the prosecution. [Quotation marks and citations omitted.]

Further, "positive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).

Eric Love and Jimmy Trussell identified defendant as the perpetrator in the most recent trial.[1] Love asserted he was familiar with defendant before the shooting, knowing him from the community. Love testified that he observed defendant open the trunk of defendant's vehicle and remove a handgun, placing it in his front waistband. He also stated that he saw defendant withdraw the handgun from his waistband and fire multiple shots toward a black Impala after it came close to defendant. While Love was impeached at the most recent trial because of discrepancies in his testimony from a previous trial, Love's identification of defendant and his description of defendant's actions in discharging the firearm did not vary in either proceeding. Testimony was also elicited at the current trial regarding a taped telephone conversation between Love and friends of defendant, suggesting an initial belief that the shooter was from the Detroit area. Love asserted at trial that he indicated to defendant's friends that defendant was the shooter and not individuals from Detroit.

Defendant was separately identified as the perpetrator by Trussell. As a passenger in the black Impala, Trussell confirmed that the vehicle came close to individuals, including defendant, in the parking lot. Trussell asserted defendant withdrew a handgun from the waistband of his trousers and fired multiple shots into the hood of the vehicle. Trussell identified defendant as the shooter in a photographic array provided by police. Questions arose whether the police indicated to Trussell that the perpetrator's photograph was contained in the array before the identification. Trussell, at times, appeared to deny any such suggestion by the police and at other times

---

[1] An initial trial ended in a mistrial.

appeared to confirm the allegation. The police officer who provided the array to Trussell, Detective Carolyn Manners, denied informing Trussell that a photograph of the shooter was contained in the array before he viewed it and asserted that she read a generic instructional statement prepared by the Michigan State Police (MSP) to Trussell before he was shown the array to assure conformity and preclude any improper influence in his identification. As with Love, Trussell's testimony was impeached to an extent premised on discrepancies between his testimony at the proceeding that resulted in a mistrial and the current trial.

In this instance, two individuals identified defendant as the shooter. Standing alone, this evidence was sufficient to support defendant's convictions. *Id*. To the extent that defendant challenges the credibility of these witnesses, such a determination is not for this Court because the credibility of identification testimony comprises a question for the trier of fact. *People v Daniels*, 172 Mich App 374, 378; 431 NW2d 846 (1988). It can be presumed that having convicted defendant, the jury clearly found certain identification testimony to be credible.

Defendant also contends that the lack of physical evidence undermines the reliability of the verdict. Contrary to defendant's implication, there is no evidentiary requirement that physical evidence must be admitted to prove identity. Rather, it is a well-recognized precept that circumstantial evidence and the reasonable inferences that arise from such evidence can be sufficient to prove the elements of a crime. *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). In this instance, circumstantial evidence and reasonable inferences were unnecessary because two eyewitnesses identified defendant as the perpetrator.

## II. PROSECUTORIAL MISCONDUCT[2]

Defendant argues that the prosecutor engaged in misconduct during closing argument by asserting that defendant was the individual in a surveillance video because determining the identity of the shooter was solely within the purview of the jury.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). The prosecutor completed closing arguments without objection by defense counsel. On appeal, defendant challenges the prosecutor's closing argument pertaining to his identification of defendant as the shooter premised on the surveillance video. Defense counsel did not object contemporaneously with this challenged statement by the prosecutor, but waited until the conclusion of closing arguments and the provision of instructions to the jury before raising the concern, and then requested a mistrial. The trial court

---

[2] This Court has stated that "although the term prosecutorial misconduct has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of prosecutorial error, with only the most extreme cases rising to the level of prosecutorial misconduct." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015), quoting *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015) (quotation marks omitted).

acknowledged defendant's concern, but addressed the prosecutor's closing argument and, finding that the surveillance video was not playing during closing argument and that comments of the prosecutor were appropriate, denied defense counsel's request for a mistrial. The issue is not properly preserved for appellate review.

As recognized by this Court:

> Issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial. Further, allegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context. [*Id.* (citation omitted).]

However, "[t]o avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

> Unpreserved issues are reviewed for plain error affecting substantial rights. Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. Further, [this Court] cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect. [*Bennett*, 290 Mich App at 475-476 (quotation marks and citations omitted).]

Initially, we note that defendant's appellate counsel only identifies one statement by the prosecutor he deems to be objectionable. Counsel states: "In the closing argument, the prosecutor identified [defendant] as the person wearing the hat in the video. 'Now you can't see the face, but the size of the person in the video is the defendant. . . . So, again, the person in the white hat is [defendant].' " For thoroughness, and to provide context for the prosecutor's remarks, we have reviewed the entirety of the prosecutor's closing argument.

As recognized by this Court:

> Prosecutorial misconduct issues are decided on a case-by-case basis. This Court reviews the prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial. The prosecutor's statements are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. Generally, prosecutors are given great latitude regarding their arguments and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case. [*People v Mullins*, 322 Mich App 151, 172; ___ NW2d ___ (2017) (quotation marks and citations omitted).]

During closing argument, the prosecutor made multiple references to an individual wearing a hat in the surveillance video from the Bar and asserted that individual was defendant. At trial, Love, who claimed familiarity with defendant, described him as wearing an "Amazon"

hat. Nakesha Williams testified that she believed a man wearing a hat was struck by a vehicle just before hearing gunshots, even though Williams could not identify the individual wearing the hat. Although Shamera McKaye denied identifying defendant as wearing a hat in the parking lot, Manners asserted that Shamera telephoned her after her interview and identified the individual in the hat as "Marques." Love indicated that defendant was wearing a specific style of hat and that he observed defendant remove a handgun from the trunk of a Grand Marquis and place it in his waistband. Trussell asserted defendant left the Bar parking lot after the shooting in a Grand Marquis. A photograph was introduced into evidence from defendant's Facebook page showing him standing by a vehicle that looked like a Grand Marquis. While Detective Manners confirmed that the exact model of the vehicle attributed to defendant was not discernible from the surveillance video, the vehicle in the video and in the Facebook photographs were similar.

The statements by the prosecutor comprised argument premised on the evidence admitted at trial and cannot be construed as misconduct. Throughout the trial, the only dispute that existed was the identity of the perpetrator. A witness familiar with defendant described him wearing a specific type of hat. Another witness described an individual in the Bar's parking lot just before the shooting wearing that type of hat. The surveillance video, while of insufficient quality to discern the face of the hat-wearing individual, confirmed the presence of an individual in the specific type of hat in that location just before the shooting. In addition, the individual wearing the hat was tied through testimony and the surveillance video to a specific type of vehicle, which was also associated with defendant. As such, the prosecutor's comments in closing argument were premised on the evidence admitted at trial and "reasonable inferences" deriving from that evidence. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

Of significance is the fact that the surveillance video was not playing during the prosecutor's closing argument. Thus, the prosecutor's comments comprised a compilation of the various items of evidence admitted at trial, including testimony and the surveillance video, to argue that the evidence consistently linked defendant to the crime scene and the events. Defendant's contention that the prosecutor's statements somehow violated an agreement that witnesses would not identify defendant in the video for the jury is mistaken. The parties concurred that any identification of defendant on the surveillance video was solely in the purview of the jury and that, as a witness, Manners would not identify defendant as the individual wearing the hat in the video. That agreement was not violated when Manners testified. As noted by the trial court, in addressing defendant's contention of error and request for a mistrial, there is an inherent distinction to be made between a witness asserting to identify a defendant from a surveillance video, thereby invading the province of the jury,[3] and a prosecutor, during closing argument, bringing all of the evidence together to argue that the defendant is the perpetrator of the charged crime.[4] The prosecutor's argument did not comprise misconduct.

---

[3] See *People v Fomby*, 300 Mich App 46, 52; 831 NW2d 887 (2013) ("[t]he court concluded that the issue of whether the defendant in the courtroom was the person pictured in a surveillance photo 'was a determination properly left to the jury' " [citation omitted]).

[4] See, generally, *Seals*, 285 Mich App at 22.

On appeal, defendant also generally asserts that the prosecutor engaged in misconduct by improperly vouching for the credibility of Love and Trussell, but does not adequately expand upon this assertion. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (quotation marks and citation omitted). Defendant's failure to properly address the merits of his argument constitutes abandonment of the issue. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

The prosecutor addressed and summarized inconsistencies in testimony by certain witnesses and acknowledged admissions by the witnesses that certain prior testimony was not truthful. In identifying these inconsistencies, the prosecutor commensurately highlighted areas of credibility to suggest that the jury needed to determine what testimony to believe and which to disregard or deem questionable. While we acknowledge that a prosecutor is not permitted to vouch for the credibility of a witness by suggesting or implying the prosecutor has some special knowledge that the witness testified truthfully, *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995), "[a] prosecutor may . . . argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief," *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). Because "the prosecutor did not personally vouch for the credibility of the prosecution witness[es], but rather argued that the facts and evidence demonstrated that the witness[es were] credible," the statements or remarks were not improper. *Id*.

Finally, the trial court instructed the jury that statements, comments or questions by counsel did not comprise evidence, advised the jury of ways to evaluate witness credibility and inconsistencies in testimony, and addressed the issue of identification and the prosecutor's burden of proof. Defense counsel specifically affirmed satisfaction with the instructions provided. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836, 845 (2003). Thus, any alleged prejudicial effect asserted by defendant was cured by the instructions issued.

## III. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant asserts that he was deprived of the effective assistance of counsel at trial because defense counsel failed to object to the instances of prosecutorial misconduct alleged to have occurred during the prosecutor's closing argument. Defendant contends that his counsel's failure to object during the prosecutor's closing argument cannot be construed to comprise reasonable trial strategy and was prejudicial to defendant.

To preserve a claim of ineffective of assistance of counsel, the issue must be raised in a motion for a new trial or a motion for a *Ginther*[5] hearing in the trial court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). The prosecutor completed closing arguments without objection by defense counsel until the *conclusion* of the prosecutor's closing argument,

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

when defense counsel objected to a statement by the prosecutor suggesting sympathy for the victim and his family. Defendant did not seek a motion for a new trial or *Ginther* hearing in the trial court, but did file a motion to remand with this Court, which was denied. *People v Ford*, unpublished order of the Court of Appeals, entered December 8, 2017 (Docket No. 339084). Accordingly, we review this issue for "mistakes apparent on the record." *Petri*, 279 Mich App at 410.

"A defendant's ineffective assistance of counsel claim 'is a mixed question of fact and constitutional law.' When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law. The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 671-672; 892 NW2d 15 (2016) (citations omitted).

To establish ineffective assistance of counsel, a defendant must demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Having determined that defendant's claim of prosecutorial misconduct lacks merit, we find that defendant is unable to support his contention of ineffective assistance of counsel. Because the prosecutor's statements did not comprise misconduct, defense counsel's failure to raise a futile objection to the statements cannot constitute ineffective assistance. *Id*. Further, defendant ignores that defense counsel did object to an alleged sympathy argument by the prosecutor and secured an instruction to the jury by the trial court. While not properly preserving the issue for appellate review, defense counsel did seek a mistrial premised on the errors he contends comprised misconduct by the prosecutor, which the trial court rejected. That a strategy or mechanism pursued by defense counsel was unsuccessful does not equate to ineffective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).[6]

## IV. JUDICIAL MISCONDUCT, BIAS AND LACK OF IMPARTIALITY

In his standard 4 brief, defendant asserts that the trial judge was biased, engaged in misconduct and lacked impartiality. In support of this claim, defendant cites to an exchange

---

[6] Contrary to defendant's assertion on appeal, failing to object during closing argument could have comprised trial strategy. The Michigan Supreme Court has recognized that "there are times when it is better not to object and draw attention to an improper comment." *Bahoda*, 448 Mich at 287 n 54. "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

between the trial judge and counsel wherein it was agreed that the prosecution's witness, Manners, would not identify defendant in the Bar's surveillance video when testifying. Defendant also suggests that the trial court erred in admitting photographs, derived from defendant's Facebook page by police, showing him with a Mercury Grand Marquis vehicle. Finally, defendant asserts the trial judge erred in failing to intervene, sua sponte, in the prosecutor's closing argument with regard to the prosecutor's argument that defendant was the individual wearing the distinctive hat in the Bar's surveillance video and in denying defense counsel's request for a mistrial.

To preserve a claim of judicial misconduct, a defendant must raise an objection in the trial court. See *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). Defendant failed to object or suggest, during trial, any misconduct or bias pertaining to the trial judge and, in fact, complimented the trial judge and thanked him for his fairness. The issue is not preserved for appellate review. Accordingly, the plain-error doctrine applies. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). However, if a "reviewing court has concluded that judicial misconduct has denied the defendant a fair trial, a structural error has occurred and automatic reversal is required." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

It is routinely recognized that a criminal defendant is entitled to a "neutral and detached magistrate." *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996) (quotation marks and citation omitted). A defendant asserting a claim of judicial bias must overcome "a heavy presumption of judicial impartiality." *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). This Court will typically analyze comments and conduct by a trial court in the following manner, to ascertain whether such conduct or comments deprived a defendant of a fair trial:

> Michigan case law provides that a trial judge has wide discretion and power in matters of trial conduct. This power, however, is not unlimited. If the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed. The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial. [*People v Conley*, 270 Mich App 301, 307-308; 715 NW2d 377 (2006) (quotation marks and citations omitted).]

In addition:

> Judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible. Comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality. [*Jackson*, 292 Mich App at 598 (quotation marks and citations omitted).]

As explained by the Michigan Supreme Court in *Stevens*, 498 Mich at 164:

A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial.

What is most notable is that defendant takes issue with certain decisions or rulings by the trial court but makes no comments or assertions with regard to the demeanor of the trial judge or blatantly biased conduct toward defendant or counsel.

First, defendant takes issue with a discussion that occurred with the prosecutor and defense counsel, wherein it was agreed that Manners, as a witness, would not testify regarding defendant's identification in the Bar's surveillance video. This comprised an agreement between counsel that the trial court tacitly approved and was not violated during trial. The agreement coincided in significant part with defense counsel's objections to the anticipated testimony. As such, the trial court's comments or decision in regard to this event cannot be construed as biased against defendant, or to comprise either misconduct or a lack of impartiality.

Second, defendant construes as misconduct the trial court's admission of evidence. Defendant mentions "exhibits 32 [and] 33," two photographs at trial taken from defendant's Facebook page showing him with a Mercury Grand Marquis. Defense counsel did not object to the admission of these photographs. "The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion. A trial court abuses its discretion when it makes an error of law in the interpretation of a rule of evidence." *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015) (quotation marks and citation omitted). "Evidence is generally admissible if it is relevant, MRE 402, i.e., if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence,' MRE 401." *People v Davis*, 320 Mich App 484, 488; 905 NW2d 482 (2017), lv gtd in part on other grounds ___ Mich ___; 910 NW2d 301 (2018). Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "The proper question is 'whether the probative value of the photographs is substantially outweighed by unfair prejudice.' " *Davis*, 320 Mich App at 488 (citation omitted). In this instance, demonstrating defendant's association with a Grand Marquis vehicle was relevant to the issue of identity. The individual wearing the distinctive hat on the Bar's surveillance video opened the trunk of such a vehicle and placed a handgun in his or her waistband just before the shooting, serving to confirm eyewitness testimony that defendant was the perpetrator. Further, defendant fails to identify a legal basis to preclude admission of this evidence or other evidence he perfunctorily cites to (but does not

discuss) in his brief. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

The third contention of defendant in support of his claim of judicial bias, misconduct and lack of impartiality pertains to the trial court's denial of defense counsel's motion for a mistrial based on the prosecutor's closing argument and identification of defendant as the perpetrator. As explained by this Court in *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017):

> A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial. For a due process violation to result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense. Further, the moving party must establish that the error complained of is so egregious that the prejudicial effect can be removed in no other way. [Quotation marks and citations omitted.]

Defense counsel's premise for requesting a mistrial was prosecutorial misconduct. The conduct complained of by defense counsel—the prosecutor's reference to and identification of defendant as the perpetrator based on evidence that included the Bar's surveillance video—did not constitute prosecutorial misconduct. As such, the trial court's denial of the request for a mistrial was not in error. Further, while defendant again takes issue with a ruling, he does not identify any comments by the trial court that could be interpreted to demonstrate bias, a lack of impartiality or misconduct by the trial judge. As noted previously, "Judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias 'unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible.' " *Jackson*, 292 Mich App at 598 (citation omitted). Further, even "[c]omments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality." *Id*. Defendant has failed to identify any conduct by the trial judge to justify his claims.

Finally, we observe that defendant and defense counsel's conduct and statements do not comport with defendant's current assertions of judicial misconduct on appeal. Specifically, with regard to the consensus that was reached by the prosecutor and defense counsel regarding limitations on Manners's testimony regarding the surveillance video, defense counsel stated: "But now [the prosecutor's] saying she is not gonna do that because *now we have a judge following the law*. And if that's the case, if she is doing it for impeachment purposes, I have no basis to object." (Emphasis added.) In addition, at sentencing, when provided an opportunity for allocution, defendant's only comment, addressed to the trial judge, was: "I would just like you to know that, um, I appreciate you being fair to me." "A defendant may not waive objection to an issue before the trial court and then raise it as an error on appeal." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000) (quotation marks and citation omitted).

## V. PERJURY, FRAUD ON THE COURT AND ENTRAPMENT

In his standard 4 brief, defendant asserts a confusing and nearly incomprehensible argument that he is entitled to a new trial based on the use or inclusion of perjured testimony at trial. Defendant asserts misconduct by the prosecutor, the police and the trial court, without any particular explanation. Defendant implies a *Brady*[7] violation without explication of what exculpatory evidence was withheld or allegedly destroyed and further contends that a fraud was perpetrated on the trial court. Defendant asserts that the warrant obtained to effectuate his arrest was "tainted," as was the ballistics evidence, without any indication of how these items were falsified. He questions the authenticity of the Bar's surveillance video without any coherent explanation.

"To preserve an evidentiary issue for appellate review, a party must object timely at trial and specify the same ground for objection as is asserted on appeal." *People v Considine*, 196 Mich App 160, 162; 492 NW2d 465 (1992). With regard to the evidentiary challenges raised by defendant in conjunction with his claims of perjury and fraud, the issues are not preserved because they are raised for the first time on appeal. Similarly, while defense counsel sought to impeach witness testimony that was inconsistent with prior statements made under oath, perjury was not alleged at trial. In addition, defendant did not assert either the suppression or destruction of evidence in the trial court through a motion for a new trial or relief from judgment. We find the issue unpreserved and thus apply the plain-error doctrine.

At the outset, defendant's contentions of fraud or misconduct pertaining to the prosecutor's opening statement and closing argument are made without setting forth the comments with which he takes issue. As discussed at length earlier in this opinion, the prosecutor did not engage in misconduct during his closing argument. Further, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. Defendant's failure to provide specific references to the alleged offensive statements by the prosecutor in opening statements or to provide any coherent explanation of the alleged misconduct results in abandonment of this issue on appeal.

Similarly, defendant, for the first time on appeal, alleges a *Brady* violation suggesting that exculpatory evidence was not provided or was destroyed. First, defendant suggests that videos from his first trial were not made available and identifies them as exhibits 2 and 3 at his first trial. A trial transcript from the mistrial indicates that the prosecutor's exhibits 2 and 3 were comprised, respectively, of the postmortem report from the autopsy and a photograph. Once again, this assertion should be deemed abandoned because "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Id*.

---

[7] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

Defendant also identifies, in conjunction with his assertions, that evidence comprised of the two photographs obtained from defendant's Facebook page, the ballistics report introduced at trial and his arrest warrant were tainted or not provided to him. As recognized in *People v Chenault*, 495 Mich 142, 149-150; 845 NW2d 731 (2014), "the essential components" of a *Brady* violation are: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." (Citation omitted.) "Stated differently, the components of a 'true Brady violation,' are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Id*. at 150 (citation omitted). With regard to the Facebook photographs, it is important to note that they are not exculpatory because they link defendant to the vehicle associated with the perpetrator. In addition, since they were posted on defendant's Facebook page, it is reasonable to assume they were available to defendant. Next, with reference to the ballistics report prepared by Sean Colonich of the MSP, defense counsel stipulated to the admission of the report into evidence. "A defendant may not waive objection to an issue before the trial court and then raise it as an error on appeal." *Carter*, 462 Mich at 214 (quotation marks and citation omitted). Defendant contends that certain other evidence, such as "Washtenaw County Police Department evidence" and "forensic testing" evidence, again, was somehow concealed, but he fails to identify any items or provide any specificity for his assertions. As such, we again resort to the often used and recognized precept and find that any such claims are abandoned because "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641.

With regard to defendant's contention that his arrest warrant was "tainted" or defective, this assertion is also without any specificity. Initially, when a defendant waits and fails to

> object to the validity of the arrest warrant until appeal, his objection [comes] too late as his appearance and plea to the information constituted a waiver of any defect in the complaint and warrant: "[t]he validity of an arrest is immaterial to the validity of a subsequent conviction when the trial court had jurisdiction of the offense charged and acquired jurisdiction of defendant's person by the filing of an information and an appearance by defendant. . . . Objection to the validity of the arrest warrant, to be timely, must come before the defendant submits to the jurisdiction of the court by pleading to the information." [*People v Burrill*, 391 Mich 124, 127 n 2; 214 NW2d 823 (1974) (citation omitted; emphasis removed).]

In addition, as discussed in *People v Martin*, 271 Mich App 280, 311; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008), albeit in the context of a search warrant:

> A defendant is entitled to a hearing to challenge the validity of a . . . warrant if he makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.] However, there is a presumption that the affidavit supporting the . . . warrant is valid. In order to warrant a hearing, the challenge must be more than conclusory and must be supported by

more than a mere desire to cross-examine.  [Quotation marks and citations and omitted.]

Other than a broad conclusory statement that the information contained in the warrant was false and misleading, defendant does not provide any specifics or examples to support his contention. As such, defendant has failed to provide any justification or basis for his claim.  This claim is abandoned, because, again, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641.  In addition, defendant's arguments regarding deficiencies in the warrant issued for his arrest are, at best, dilatory, in that he was arrested in March of 2016, and has since participated in two separate trials without raising any concerns of this nature.  Although a reviewing court sometimes "review[s] issues that were first raised on appeal as though they had been properly raised on the basis that the delay in raising the issues was related to a subsequent development in the law, 'rather than . . . any dilatory practice on the part of plaintiff or defendants,' " *People v Lonsby*, 268 Mich App 375, 394; 707 NW2d 610 (2005) (citation omitted), that is not the situation here.

Finally, the primary contention raised by defendant appears to be his insistence that the prosecutor relied upon, and the trial court permitted, the use of perjured testimony to obtain defendant's convictions.  Specifically, defendant references conflicting testimony elicited from Love and Trussell in his first and second trials.[8]  He also cites to testimony by Manners, suggesting it was perjured or false.  "It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment.  If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *People v Schrauben*, 314 Mich App 181, 187; 886 NW2d 173 (2016) (quotation marks and citations omitted).

Inconsistencies did exist in the trial testimony elicited, particularly with respect to Love and Trussell, from the first trial.  However, there is no evidence or suggestion that the prosecutor was aware that the witnesses would alter or change their testimony from the first trial.  Second, the inconsistencies were primarily focused on inconsequential or peripheral issues, such as whether the witness was drinking or smoking marijuana in the Bar's parking lot, the reason for going to the Bar on that particular evening, and if defendant was observed trying to intervene in a separate physical altercation that occurred before the shooting.  The witnesses did not vary in their identification of defendant as the shooter.  Thus, "[e]ven if the prosecution knowingly presented perjured testimony, the false testimony likely would not have affected the judgment of the jury." *Id*. at 188.  In particular, the inconsistencies cited by defendant are more consequential

---

[8] Defendant's argument is, to say the least, convoluted.  He appears to be suggesting, in part, that the surveillance video was fabricated and thus that its use constituted a "fraud upon the court." He argues that the trial court should have excluded the video from evidence.  But defense counsel had no objection to the introduction of the surveillance video and there is no basis from which to conclude that the video was falsified or otherwise inauthentic.

to issues of witness credibility and the weight that should be attached to the testimony of a particular witness. Further, although Love's current assertion that he saw defendant remove a handgun from the trunk of defendant's vehicle and place it in his waistband conflicts with his testimony in the first trial that he could not ascertain what defendant removed from the trunk of the vehicle, Love asserted that he was not truthful in the first trial. As such, the testimony from Love that resulted in defendant's conviction cannot be construed as "perjured." Defense counsel also had opportunities to adequately cross-examine these witnesses while under oath and point out the inconsistencies in their testimony for the jury's consideration. "The focus must be on the fairness of the trial, not on the prosecutor's or the court's culpability." *Id*. at 189 (quotation marks and citation omitted). "Therefore, 'a conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment.' " *Id*. (citation omitted). Although the inconsistencies in the testimony, primarily on peripheral matters, may lead to issues of credibility, they do not detract from the consistent testimony elicited identifying and implicating defendant as the shooter.[9]

Finally, defendant often uses the term "entrapment" within his standard 4 brief, but it appears that he does not understand the legal meaning of the term. "In Michigan, entrapment is analyzed according to a two-pronged test, with entrapment existing if either prong is met. The court must consider whether (1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances, or (2) the police engaged in conduct so reprehensible that it cannot be tolerated." *People v Ealy*, 222 Mich App 508, 510; 564 NW2d 168 (1997). It is difficult to comprehend how the police "induce[d]" defendant to commit the crimes charged. In addition, other than asserting entrapment, defendant fails to explicate or identify the "reprehensible" conduct engaged in by the police. Again, this contention by defendant is construed as abandoned because "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE AND TRIAL COUNSEL

Defendant contends, in his standard 4 brief, that he was deprived of the effective assistance of appellate counsel, in part, due to appellate counsel's performance on appeal and also because of the failure to raise certain issues on appeal, including but not limited to the failure to raise a claim of ineffective assistance with regard to defendant's trial counsel. "[T]o permit proper review in cases where appellate counsel has pursued an appeal as of right and raised nonfrivolous claims, the defendant must make a testimonial record in the trial court in connection with a claim of ineffective assistance of appellate counsel." *People v Reed*, 198 Mich App 639, 647; 499 NW2d 441 (1993), aff'd 449 Mich 375 (1995), citing *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Because the issues were not raised and a "testimonial record" was not made in the trial court, the issues are not preserved.

---

[9] In addition, defendant does not explain or expand upon his assertion that Manners and other witnesses provided perjured testimony.

"Where appellate counsel has perfected an appeal on behalf of a defendant, it is unlikely, in the absence of testimony of appellate counsel, that the defendant would be able to establish that appellate counsel's failure to raise particular issues was the result of deficient performance as opposed to strategy." *Reed*, 198 Mich App at 647 n 6.

> An appellate attorney's failure to raise an issue may result in counsel's performance falling below an objective standard of reasonableness if that error is sufficiently egregious and prejudicial. However, appellate counsel's failure to raise every conceivable issue does not constitute ineffective assistance of counsel. Counsel must be allowed to exercise reasonable professional judgment in selecting those issues most promising for review. The fact that counsel failed to recognize or failed to raise a claim despite recognizing it does not per se constitute cause for relief from judgment. [*Id*. at 646-647 (citation omitted).]

Counsel's decision regarding what arguments to present is necessarily viewed as one of strategy, which will not be second-guessed by this Court on appeal. See *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) ("[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight" [quotation marks and citations omitted]).

It has historically been recognized that an "attorney need not advance every argument, regardless of merit, urged by the appellant. But the attorney must be available to assist in preparing and submitting a brief to the appellate court and must play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim." *People v Johnson*, 144 Mich App 125, 131; 373 NW2d 263 (1985) (quotation marks and citations omitted; emphasis removed). Defendant's complaint that appellate counsel failed to raise meritorious issues on appeal suffers from three deficiencies. First, defendant fails to actually identify with any specificity or coherence exactly which issues were not raised or what actions or omissions are challenged. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Payne*, 285 Mich App at 195 (quotation marks and citation omitted).[10] Second, "[a]ppellate counsel may legitimately winnow out weaker arguments in order to focus on those arguments that are more likely to prevail." *Uphaus*, 278 Mich App at 186-187. Even if this Court were to construe as deficient appellate counsel's failure to raise issues identified by defendant on appeal, defendant has been permitted to raise those issues in a standard 4 brief. Having examined the record and defendant's claims from his standard 4 brief and finding the claims to be seriously lacking and without merit, defendant cannot demonstrate any prejudice by appellate counsel's alleged deficiency in failing to raise these issues. *People v Pratt*, 254 Mich App 425, 430-431; 656 NW2d 866 (2002) ("Furthermore, defendant's argument fails because he is unable to show any possible prejudice. Defendant himself argues that his trial counsel was ineffective;

---

[10] Defendant makes references to an alleged failure by trial counsel to call and cross-examine various witnesses but utterly fails to expand upon these references.

therefore, the issue was presented to this Court, and appellate counsel's failure to do so was insignificant."). Third, appellate counsel did, albeit on a limited scale, raise an issue of ineffective assistance of counsel. While the claim lacked merit, it cannot be said that appellate counsel completely ignored this avenue of appeal.

Defendant also suggests in his standard 4 brief that appellate counsel was ineffective for failing to perfect his claim of appeal. We admit to being confused by this argument, given that defendant is before this Court on an appeal of right. As such, there can be no other reasonable conclusion other than that defendant is mistaken and that such a claim lacks merit.

Defendant separately suggests, within the argument for this issue, that his trial counsel was ineffective for failing to seek a directed verdict. A defendant "is entitled to 'a verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction.' " *People v Szalma*, 487 Mich 708, 720-721; 790 NW2d 662 (2010), quoting MCR 6.419(A). "In assessing a motion for a directed verdict of acquittal, a trial court must consider the evidence presented by the prosecution to the time the motion is made and in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Riley (After Remand)*, 468 Mich 135, 139-140; 659 NW2d 611 (2003).

In this circumstance, a motion for a directed verdict would have been futile. As discussed in conjunction with defendant's sufficiency claim, the evidence presented in the prosecution's case-in-chief, when viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to find that defendant was the shooter and that his actions resulted in the death of the victim. Trial counsel cannot be deemed ineffective for having failed to make a futile motion for directed verdict. *Ericksen*, 288 Mich App at 201.

Affirmed.


/s/ Colleen A. O'Brien
/s/ Patrick M. Meter
/s/ Michael J. Riordan